When the appellant is ready, please approach the podium. May it please the court, your honors, Lamar Walters here on behalf of the plaintiff appellant, Glendora Plantation, Incorporated. What we have at issue in this case, your honors, is the grant of a motion for summary judgment on behalf of Angus and the denial of a motion for summary judgment on behalf of Glendora. There are basically five issues that are presented for review. One, that the district court erred by failing to construe the right-of-way agreement in accordance with Fifth Circuit precedent in Louisiana law. Two, the district court erred by engaging in improper fact-finding and weighing of evidence. Three, the district court erred by improperly altering the terms of the right-of-way agreement. Four, the district court erred by considering extrinsic evidence to interpret the right-of-way agreement. And then five, the court erred by denying the appeal of the magistrate judge's discovery ruling related to information that would go directly to the damages issue. Judge, I think, or judges, I think some discussion of the factual background is important in this case, given the factual issues. There was an option exercised in 1979 by Angus's predecessor in title, IMC Chemical Company, and Glendora's predecessor in title, George Smelser, that allowed IMC to construct, maintain, inspect, operate, protect, alter, repair, replace, and change the size of a single pipeline. They did that. Sir? They did that. They did that. They exercised the option. It became a right-of-way agreement. What are your damages? I'm trying to, it seems to me that they can operate one pipeline. They can change it from 12 to 16. They've done everything. So the only question is, is there something there that creates a cause of action for you by the fact that they didn't remove the 12-inch pipeline, okay? What are your damages? Where do your damages stem from, and what do you get for damages if they're also supposed to remove it? Judge Benavides, the answer to that question is this. For a bad faith trespass, it's disgorgement of profits. In other words, any profits that result from the bad faith trespass. Okay. But they're not trespassing when they put the 16-inch pipeline in there. They can do that. And this other pipeline, I thought it's shut. It's capped, isn't it? They're not using it? It is, Judge. Okay, so where are the profits coming from the 12-inch pipeline? Here's the issue there, Judge. Also, the trespass damages would be another issue, just basic trespass damages. But for bad faith trespass, here's the problem, and here's what the court did not grasp of the district court. They had the right to have a pipeline in operation, okay? Ernest Green, the site leader for Angus, stated that if we've got the 12-inch pipeline as a backup, it's in operation. So thereby, when they retain the 12-inch pipeline as a backup, which the court found that they did, specifically stated that in its reasons for ruling, now you have two pipelines in operation. The second one. Wait, wait, wait, wait. You have two pipelines potentially in operation, right? I mean, he didn't say we're running materials or oil or whatever through both pipelines. It's potentially one is available, right? All right. Now, wouldn't your cause of action accrue when and if both of them are operating? I mean, until such time as that, you've got one pipeline, it's authorized, one pipeline is being used. Now, you make a point as if they use a 12-inch pipeline, if they do it because a 16-inch pipeline breaks down, then I don't know why they can't replace it with a 12. And you still only have one. They're probably not going to make as much profit because they're only going to have a 12-inch pipeline instead of a 16. So I guess I'm just, you know, where's the meat? Judge, here's the issue. Is this just to complain? I mean, where's the meat of this lawsuit? Judge, here's the other issue. Mr. Green admitted that they're maintaining two pipelines. Right, but is that costing your client any money? The right-of-way agreement specifically describes what they can and cannot do. And they're not to be viewed with favor, the right-of-way agreements under Louisiana law. Well, I understand that. But everything is done hoitsy-toitsy except the question of do they have to remove it. And my question is, even if, let's say, there's some kind of ambiguity, perhaps they should remove it, where is the harm that's suffered if it's within the right-of-way, it's within the area where the pipeline should be, only one pipeline is operated, where is any harm to your client? Judge, it's an additional burden on the property. And here's the critical point. This 12-inch pipeline had leaked on numerous occasions. My clients don't have any way of knowing what underground water wells or anything of that nature were affected by it. The property is burdened by it. And Angus knew that. And what Angus did was it came in and said, okay, we're going to buy the right to abandon. Because it's not stated in the contract, we're going to buy that from you, but we want you to accept all liability for it. So Angus, well, it knew that the right to abandon wasn't in the contract. So now my client's property is burdened by that additional pipeline. But he hadn't accepted any responsibility for it. Correct. It's still the responsibility of the other party. Correct, Your Honor. But nonetheless, it's there. If there's a problem with it, now Angus has to come back on the property. If it collapses, they've got to come in, they've got to dig it up, they've got to rebuild it or repair it, whatever else. So it's an absolute burden. And if you look at Article 642 of the Louisiana Civil Code, Your Honor, unless it's specifically stipulated in the servitude agreement for that additional burden, then it's absolutely a breach of the servitude agreement. And it's not stipulated anywhere in there, Your Honor. And I think that's a critical point as to where the trial court erred. They had two words that they were kind of judging and weighing against one another. One is abandon, and two is remove. And the problem that we have here is the court chose remove. They're required to interpret any question, any doubt as to the extent of the servitude agreement, in favor of the Servian estate, which is Glendora. And Judge Benavides, as to your question, the problem arises because abandon is not found anywhere in the contract. Well, neither is remove. Our position is it's inherent. If you're going to replace something, removal is inherent in that. If I replace the light bulb, I've got to remove the old one. If I replace the doorknob, I've got to remove the old one. That's just the way it works. Now, what the court did is it weighed those two things against each other and found in favor of the non-Servian estate. And Louisiana law doesn't allow for that. Article 730, which relates to predial servitude, states that any question as to the extent or manner of the servitude has to be found in favor of the Servian estate. Article 645 makes that applicable to personal servitude of right of use, which is at issue in this case. Judge, another issue here in terms of the weighing of evidence in Anderson v. Liberty Lobby, the court made it very clear that a court can't make credibility determinations, weigh evidence, or draw inferences in favor of the movement on a motion for summary judgment. That's exactly what the court did at every term. It weighed and rejected the testimony of Mr. Ernest Green, said it was irrelevant. When he said that we're maintaining two pipelines, if we have a backup, we're operating two pipelines, the court found that, in fact, and stated at page 10 of its opinion that this was being used as a backup. So according to Mr. Green, it's operated. Now, whether the court agrees with that or not, that's not the only issue. He also said we have to maintain two pipelines. And to your point, Judge Benavides, if they're not turning over the liability of the pipeline to us, then they've got the obligation to maintain it, and Mr. Green admitted that. He's not shying away from that. So now we're definitely in violation of the servitude. We're maintaining not only the 12-inch pipeline but the 16-inch pipeline, and my client's property is burdened with it. And here's the fundamental problem, the bigger problem with this, is that if Angus decides that it wants to abandon this current pipeline and move up to an 18-inch, and next year it wants to abandon that pipeline and move up to a 20-inch, my client's property is going to turn into a pipeline graveyard. I mean, that's what it is, and that's what they're trying to protect against. If the court's allowed to expand the servitude agreement, then it's got a big problem on its hands. The next issue, Judge, in Apache Court versus W&T offshore, the Fifth Circuit held that where there's a choice of reasonable interpretations of contract, there is a genuine issue of material fact that precludes summary judgment. In this case, there is certainly a reasonable interpretation of the contract that favors my client that says where abandonment is not stated anywhere in the contract that Angus shouldn't be allowed to abandon the pipeline. Removal is not stated either, but if we look at the reasonable interpretation of the term replaced, like I say, removal in almost every context is a part of the term replaced. And the court said, well, we think the term substitute is the correct term. Well, the court never went to the dictionary to look for the definition of that, but if it did, it would have found three examples in the same dictionary it used specifically relate to the removal of one thing in place of another and substituting that, one being a sports player in a game when they substitute, one being a teacher in a classroom when they're substituted, and the other being a piece of food or a type of food in a recipe. I mean, all of those things indicate the removal of one when you put the other one in. Why don't you talk about the fiber optic issue? You seem to say that, well, they're not using it right now. They placed the fiber optics, but it's not in use. But they're allowed to install anything that would be a convenient installation. Why isn't it convenient the fact that they now have this option of using the fiber optics to, as I understand it, monitor the pressure? And that's a good point, Judge Costa. And here, from a strict interpretation of the servitude agreement, which is what's required under Louisiana law, it says that the appurtenance has to be necessary and convenient. Not just convenient, necessary and convenient. Clearly, it's not necessary because it's not in use. They've got no plans to hook it up. The budget wasn't even approved to put the control panels at the end of the thing to hook the fiber optic cables up. The other issue with that, Judge Costa, is that these fiber optic cables are put in for the primary purpose of something completely unrelated to the pipeline. And that's for the production plant to control from the production plant. Well, you're saying that's the primary purpose, but a purpose is the fiber optics can help monitor the pressure, right? That's correct, Your Honor. And that's what led to this whole problem is there were leaks, there was too much pressure. You're absolutely right, Your Honor. But they're not granted the right to do the other under the contract. And that's what they were put in place for. That was the primary purpose. I'm not saying that they can't do one thing with the fiber optic cables, but that's not the intent of the fiber optic cables. The main reason— But once the fiber optic cables are in your client's, the ground of his plantation, why does it matter what they're used for? I mean, the invasion is that they're sitting there in the dirt. That's correct, Your Honor. And because they serve such an important purpose, my client, naturally, if they want to sell a right-of-way to run fiber optic cables, that ought to be their option instead of just having somebody come in, Angus come in, and just willy-nilly put whatever they want in the ground and get the benefit of it. I mean, that's—the servitude agreements are strictly construed because they're a restraint on the property. I mean, that's what they are. I could be incorrect in how I read the brief, but is this tract of land that you're involved with here for your clients, is that the only easement that's in question with respect to this pipe, this second pipe? That's correct, Your Honor. You're in a position, if you're correct, then— That's correct, Your Honor. And here's the other issue. In Angus's brief, and at the trial court level, it raised this point, and this is where the court got into extraneous evidence that it really had no business looking at it. As it says, the agreement is unambiguous. The court said, well, it looks like other parties have had servitudes where they just abandoned pipelines on the property. Well, there was a picture that Angus provided of 10 feet worth of what looked like a water line or something. It looked like a piece of pipe, not a pipeline. There's no evidence in the record that that was a servitude or that was a past practice between the parties. And if the court's going to look at extrinsic evidence, why didn't it look at the 1996 servitude agreement between Angus, the same party to this transaction, and my client, where they specifically asked for the right to abandon? I mean, it just didn't do that. It didn't look at Mr. Schmelzer's affidavit about the party's intent when they entered into the servitude agreement. None of those things. So I think the court, it didn't weigh the facts in favor of the nonmovement as it was required to do. Any further questions, Your Honors?  Counsel. The other side of this argument, which I find very compelling, is that your client has an easement for one pipeline through this property. It can be either 16 inches or 12 inches, but you only have an easement for one pipeline. And you have two pipelines there, and there's nothing that gives you the right to have two pipelines, whether it's abandoned or not. You now have something that you didn't contract for, two pipelines. How do you wind up getting to keep two pipelines when the estate was created for just one pipeline? Well, Your Honor, the estate was created for one pipeline, and the estate was also created recognizing the fact that there would be capital improvements that would be made to this. And that you could remove it and that you could replace it. But what in there gives you a right to have two pipelines? It says you're one pipeline. It describes the size, and it says that you can have another pipeline. You can replace it with a different size. How do you go from an easement for one pipeline, and now you have two pipelines, which can be functional. Both of them can be functional. You didn't pay for that. You didn't pay for two. I understand, Your Honor. Point number one, there aren't two pipelines. There is one pipeline that is a 16-inch line that is currently in service and is transporting wastewater from the Sterling plant to the wastewater treatment plant. There is a piece of pipe in the ground. That is not a pipeline. It is capped. It is plugged. I thought there was evidence that it can be used as a backup. Well, Your Honor, that's a hypothetical contingency. I mean, their entire case is based upon what could happen under certain circumstances. Well, is there a pipe there that can be used alternatively to the 16-inch pipe? And who would have the right to control that and do that? In its current state, the 12-inch piece of pipe is not capable of transporting anything because it is capped and plugged. It does not transport anything. And the fact that there is an operational contingency until such time, I think as Your Honor pointed out, when that second pipeline or that second piece of pipe actually goes in service, it's not a pipeline. Well, Counselor, it seems to me your argument, on the one hand, would allow, despite the expense, if the opposing party was willing to do it, Glendora Plantation, cut up, dig up, I mean, they'd be on your easement. Would they have the right to remove that pipe if they wanted to? Glendora? Glendora? Well . . . It's on your easement. They gave you the right to have a pipe there. They did not, in the easement, in any language I've seen quoted, say they can't use the property for anything else. It seems to me if you want a backup, as the district court hailed this pipe could be used for, and indeed was being available for, then you really do have two pipes there. And it seems to me your argument requires that you have no possessory or contingent interest in that other pipe. Otherwise, you have two pipelines. Well, Your Honor, first of all, again, there is nothing inherent in the word replace that indicates that what was there has to be removed. Understood. For example . . . Well, no, I understand that, but where . . . That's not the question. He's saying, you're saying it's just a pipe, it's abandoned, it's plugged. You don't have a right to two pipelines, so what's to keep the opposing party to just go in there and take that pipe out? Well, they don't own the pipe. I mean . . . So you're still claiming it's not abandoned, it's yours, you can use it. This is not a situation where we have abandoned the right-of-way. We are still operating the right-of-way pursuant to the terms of the original easement. A couple of things about the terms of the original easement . . . But what this is saying, before you leave that, if you're saying you haven't abandoned the pipe, and so you do own two, and you won't want to use the same word for them, you'll have the functioning pipeline and whatever you want to call this other thing, but it's owned by you two, you're indicating. You have two something there, and the only thing the easement gave you the right to was to have a pipeline, not a pipeline and something else, whatever you want to call it. Well, the easement gives us a right to have not only a pipeline, but to have appurtenances and other equipment which are necessary and incidental to the operation of the original pipeline. Have you argued that, that this other pipeline, if I may use such a bloated word that's been abandoned for use, is a necessary appurtenance? We have argued in our brief that it is an appurtenance. And the reason why it's a necessary appurtenance at this point is because if we go in and dig that pipeline up, we're going to actually create more of a burden on the estate than exists right now. As Your Honor pointed out, there is absolutely no damage, impairment, loss of use created on the Glendora property by the current location or the status of the 12-inch line. If we go in and dig it up, that creates a bigger disruption on the property than that which exists right now. Well, I'm sure they're willing to waive that consideration. Well, Your Honor, that's not exactly correct because— Well, you've got to put it back in the same state that it was before. That's your obligation. Except, Your Honor, we are not leaving the pipeline. This isn't a situation where the lease is terminated and we have to restore the premises to the same extent it was when we found it. We are still operating our rights under the right-of-way, and we have a right to incorporate equipment that becomes necessary, that becomes convenient, or that becomes incidental to the use of the original pipeline. And in this instance, by not removing the pipeline, we're actually doing less damage. During the original construction of the 16-inch line, there was an impact on the property insofar as some crop damage and some damage to culverts. All that was paid. All the damages associated with the leaks and the construction and all of that has been paid. But historically, we know that if we go in there— and because they won't give us any more than the 30 feet we have, and we start ripping this pipe out of the ground, it's going to create additional problems that don't exist right now. Whereas in the current state, this is not doing anything that is making their property more burdensome. Also, the argument seems to be saying it's more of a negotiating point. The question we have is what does the easement allow? You're talking about what's in the best interest of the landowner regardless of what the easement allows, and you may be correct, you may not be correct. What I guess this comes down to—I don't know what Glendora really wants here, but do they have a right, if this is their interest, to be paid if you want to do something you don't have the right to do? And it's not for you to weigh what's in their best interest. It's your obligation to follow your duties under the easement, and that's what we're here to decide. And I understand, Your Honor. And let me back up. First of all, it's important to understand that the object of this contract was to create what is known as a personal servitude, a right of use under Louisiana law. 642 of the Civil Code—and the right of way needs to be interpreted in light of those rules. 642 of the Civil Code specifically provides a right of use includes the rights contemplated or necessary to the enjoyment at the time of its creation, as well as rights that may later become necessary provided that a greater burden is not imposed on the property. There is no evidence here that the current 12-inch piece of pipe creates any burden on the property other than the hypothetical what-ifs we want to put in another pipeline one day. And under the law, that is not damaged. Number two, the Civil Code also provides that the landowner cannot create a greater burden on the servitude holder and make it more onerous. It was agreed we could put it in. It was agreed we could replace it. Well, and that's why this turns on the meaning of replace. And I think you said earlier that there's nothing inherent in replace that means getting rid of the previous pipeline. But that's not their burden. They don't have to show that that's the only possible meaning. They just have to show that it's one reasonable meaning. And in your brief, you use the example of the I-10 bridge, and you say, well, now there's the I-10 bridge over Lake Pontchartrain. And, you know, the old bridge is still standing, but people would reasonably say, oh, the I-10 bridge replaced that older one. That's a reasonable use of replace. But isn't it also reasonable, let's say tomorrow they decide we're going to detonate the I-10 bridge and build a new bridge right over it. It would also be reasonable then to say they're replacing the bridge, wouldn't it? Well, the question – Is it or not? Is that a reasonable use of replace? Well, I think both. I think replace could be either. And then it's ambiguous. And the district court found it could only be read in your favor. Well, no, it's not ambiguous when it's read in the context of a right of use. In other words – Is that what the district court said? Is that what the district court said? Well, the district court said that there is nothing inherent in using the word replace that requires removal. But there's additional language in the servitude agreement that eliminates the ambiguity that Your Honor is suggesting. Well, it says a pipeline, so that might eliminate the ambiguity in plaintiff's favor because a pipeline means one. I know you don't think it's a pipeline because it's capped. But it also says all incidental equipment and appurtenances. It also makes a reference in the servitude agreement to pipelines in the plural. But is a pipeline incidental to a pipeline? If you're reading pipeline to be incidental to a pipeline, you're saying because it can be incidental. Well, that doesn't make any sense. You're talking about a pipeline and what is incidental to that pipeline, not a pipeline being incidental to another pipeline. But, Your Honor, it's incidental to the operation of the entire right-of-way because what we're trying to do is we're trying to operate a pipeline with minimal disruption to the rights of the landowner. That's the object of the right of use. And by operating one single pipeline and keeping it, the other line, in place so that . . . How do we know the way this case was presented procedurally below? I mean, there wasn't a lot of evidence on what the burden is going to be on the land. I mean, if that's your argument, I don't think that these cross motions for summary judgment that were basically just teed up as legal interpretations of the right-of-way agreement. I'm not sure that there's a basis. You might be right, but I'm not sure there's a basis for saying what's going to be a greater burden on the landowner. Was there any evidence to that effect? Well, the evidence would have come from the plaintiffs. I mean, we pointed out in our motion for summary judgment in the deposition of the landowner, Mr. Nolan and Mr. Hoover, we specifically asked them whether or not the location of the 12-inch line and the installation of the fiber optic tables created any impairment on the agricultural use of the property, on any prospective development of the property. But you didn't move for summary judgment on the basis of that testimony. You moved for summary judgment saying it's a matter of contract interpretation and don't consider extrinsic evidence. Well, but part of the summary judgment was to show that there was no increased burden because one of the things we specifically relied on as our motion for summary judgment was 642 because our argument is that this right-of-way needs to be read not just with respect to replace but with our right to install the additional equipment and with 642, which allows us to modify and do what is necessary. It's as simple as this. The plaintiffs gave us a right to operate a single pipeline. Today, we are not doing anything other than operating a single pipeline. There is nothing that Angus has done in its capital improvement of this pipeline that has created any increased or greater burden on the Glendora property. If anything, we have greatly improved the property for them by a number of things. Number one, we mitigated the damage by putting in a state-of-the-art pipeline to decrease leaks in the future. Number two, the fiber optic capacity is going to give us a better ability in real time to manage, identify potential leaks. Number three, the fiber optic cables are not used for anything other than the operation of the wastewater treatment plant. Keeping in mind, this is the only line that runs into the wastewater treatment plant. This is not a fiber optic cable that's going to increase our ability to make a chemical in some reactor in the plant. All it's going to do is increase the functional capacity of the existing wastewater treatment plant. It seems to me your argument, counsel, means that you could have laid two pipelines initially. Is that correct? So long as you only used one, wear it out, do whatever, shift to the other one. Don't even wait for it to wear out, just going back and forth. So long as the argument can be this other one is convenient or necessary for whatever reason. Are you willing to go that far with me? You could have laid two, three, four pipelines? Well, you know, it's hard to argue hypotheticals, but if the technology had been, for example, at that time, or that there was some engineering requirement that you really do need, for example, an alternate or a backup pipeline, number one, as long as two are not being operated, then the fact that you have an additional capacity just means you have equipment to support the additional pipeline. If you have the first pipeline, it doesn't mean you have two pipelines. I would think on Louisiana law it's a pretty good idea to have such things worked out in agreements as opposed to relying on language like necessary and convenient and pertinences. I mean, that's one of my problems with your argument, just how far does it go? Anything that would be useful in the long-term operation of a pipeline, you seem to be saying doesn't have to be negotiated with the landowner. You just need to figure that out as the serving estate owner and go ahead and do it, as long as it doesn't create an additional burden to the landowner's use of the property. Well, Your Honor, that can be a negotiated term, but under Louisiana law, it's simply a rule that is applicable to those types of contracts that are found to be a right of use, which is what the court found in this case. I mean, 642 is an inherent implied term that goes into any right of use. It's also important, I think, to point out when the court is considering the various statutes in play, for example, 748 of the Civil Code provides that the owner of the serving estate may do nothing tending to diminish or make more inconvenient the use of the servitude. In other words, the landowner has an obligation not to make us do unnecessary things. And in this instance, all we have done is provide a capital improvement to this pipeline. And there's one point that really needs to not be overstated here, is the fact that whether it's there or not, the plaintiffs have not shown one single scintilla of damage that they've incurred. Well, the problem that I see, though, is that you got a deal to lay one pipeline, and you've really got two pipelines there, and your estate that you got doesn't provide for two pipelines, but that's what you've got. You can say, well, it's not operable, but it's capable of doing it. You've got all the other stuff going, and you wind up with two pipelines, and that's not what you bought. So it doesn't make any difference whether what removed means or anything like that. You wind up with more rights. You got a deal for one pipeline, and now you have two. And I don't see how you get around. I don't see how a rose is a rose is a rose. I mean, you know, you bought one rose. You want a dozen. Your Honor, again, there's no evidence that the 12-inch line in its current condition is capable of transporting anything. It is plugged. It is capped. It has not been used since construction, and there's no evidence that it's ever going to be used. You said capable. I thought there was evidence that it's capable. A witness, not that you put on, but my understanding is one of the people who was involved with this testified it could be used as a backup. That sounds like capable to me. Is that not what the evidence is? Well, Your Honor, originally, and this gets into parole evidence that the plaintiffs argue shouldn't come in. Originally, there was some consideration of an engineering feasibility of it operating as a backup. That is not the case right now. It is not in a situation where you would just move a valve and the material would flow through the 12-inch line. It is capped and plugged. It is not in use. Now, while it's not a pipeline, it is an appurtenance which has become necessary because the goal of the right-of-way is for us to operate the pipeline and do as little damage to the plaintiff's property as we can. And if we have to go in there and rip this thing up, it is going to cause far more disturbance, far more damage than where it is right now because the plaintiffs haven't shown one single issue or problem that is created with the current location of the 12-inch line. And so, Your Honor, and the other thing which I also think is, because Your Honor asked, what's the meat of this? This lawsuit was pending when all of this construction was going on. The plaintiffs never sought any form of injunctive relief. They never came in and asked us or asked the court to enjoin us from operating the 16-inch line. Can you wrap up your summary quickly, please? The point is, what they're trying to do is they're trying to take the 12-inch line and get a piece of Angus' profits without having any damage to their own property whatsoever. Your Honor, as to the last argument, it's no different than the arguments that Angus has been making all along, that my clients are greedy. Well, if they're not using it, you're not going to get any profits out of it. I mean, they're right about that. I mean, not because of what they say, but if they don't use it, there's not going to be profits. If that's your theory, you're not going to get anything unless they use it and make some money out of it. Here's the issue there, Judge. With the bad faith trespass, they've admitted to it. We're maintaining two pipelines. They were maintaining one. They built the other one. Now, they maintain a second one. That's the bad faith. How can you say it's in bad faith when what they're doing was completely approved by the federal district court judge? I mean, even if he's wrong, are you saying that was a bad faith opinion he wrote? Here's why, Judge Costas. They went and filed a lawsuit asking for permission to do this, and if we go back and look at the facts. And they got it. Right. If we go back and look at the facts up front, Your Honor, they went and brought a pipeline servitude ratification and acknowledgement agreement saying give us the right to abandon this pipeline and to put a second line in. They said acknowledge the right. I mean, they're good lawyers that said basically we think we have the right, but let's get this clarified so only one person sues us and takes us to the Fifth Circuit as opposed to all the landowners. That's correct, Your Honor. But obviously, clearly, they're not going to pay $237,000, which is the number they put in the record, to Angus because they believe they had the right to do it. I mean, that just doesn't make any sense. Is the bad faith issue joined before us at this time, or is it just a question of this ambiguity? Yes, sir. I believe it is because we addressed each of the rulings by the court in its entirety, and bad faith was one of the issues. And what is your position, a legal position, of why it's a bad faith trespass as opposed to another type of trespass? Your Honor, under Article – Civil Code Article 487, a bad faith trespass occurs when a party to a servitude agreement knows of defects in the act translative of ownership, when he's made known of those defects, or when an action is instituted against him by the owner for the recovery of the thing. And certainly, there was a lawsuit in place, Judge. We filed our counterclaims against Angus, and then Angus went forward after receiving – after being – after the lawsuit, the counterclaims were filed on August 13th. On August 17th, Angus went on to Glendora's property and constructed the pipeline. Up and after. So that's the problem, Judge, and here's the kicker. Well, I'm still trying to figure out the meat, what the meat is, where your damages are. Now, let's assume for purposes of argument that I – that in my view, that they've expanded on their easement, that they got an easement for one pipeline, and they can't wind up with two pipelines by saying we got it capped if it can be used, okay? But you're saying you're entitled to profits, but it's not being used, so there's no profits from it. So what is this thing? Is this like – and I don't mean it in a bad way, but this is like a holdup, like, okay, they're either going to have to take it out and pay for it, it's going to cost them so much money, or it's going to be available to them and it's got an economic value to them, and frankly, you know, we're going to hold that over their head to get as much money as we can from them. And I'm not asserting that that's a bad thing. That's the way life operates in this economy, you know. But where are your damages – what's your model here? Judge, first, there's just the basic trespass, out of the realm of bad faith. There's no doubt they've exceeded the scope of the contract. So what's the remedy? Do they just rip out the pipeline, or in order not to rip out the pipeline, they've got to deal with you? Sorry, I apologize for interrupting you, Judge. If they're going to have this extra right, there needs to be reimbursement for it, which certainly – Wait a minute, wait a minute, wait a minute, wait a minute. What if they say, heck no, we're not going to pay you a dime, we're just going to go in there, do as little damage as we can, you're right, and they just take out the second line? Judge, there's still – You don't get any profits. Under the bad faith argument, there's still trespass damages. They trespassed for this long of a period of time, Judge, so we're entitled to trespass damages. What damages are you going to get for a piece of pipe that's not working, that's underground, that's capped? Judge, that would be for the jury to make a determination. This needs to be settled. And Judge, with respect to the discovery issue, the court said we had a viable claim. The magistrate judge said there was a – or made a ruling on whether or not there was a viable claim as to bad faith. We submit that there is, Your Honor, and for those reasons we would ask that the judgment be reversed. Thank you for your time. Thanks both sets of counsel for bringing this case to us, helping us understand it better. We are in recess until tomorrow morning at 9 o'clock.